92 F.3d 781
 1996-2 Trade Cases P 71,501, 96 Cal. Daily
Op. Serv. 5506,
96 Daily Journal D.A.R. 9028
AMERICAN AD MANAGEMENT, INC.; O'Connor Agency, Plaintiffs-Appellants,
v.
GTE CORP., Defendant,
and
General Telephone Company of California; GTE Directories
Publishing Corp.; GTE Directories Service Corp.;
GTE National Marketing Service Corp.;
GTE Directories Sales Corp.,
Defendants-Appellees.
 No. 94-56207.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1996.
Decided July 26, 1996.
 
 1
 Maxwell M. Blecher, Blecher & Collins, Los Angeles, California, for plaintiffs-appellants.
 
 
 2
 Mark L. Callister, Callister, Nebeker & McCullough, Salt Lake City, Utah, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Central District of California, Lourdes G. Baird, District Judge, Presiding. D.C. Nos. CV-92-2810-LGB, CV-93-3650-LGB.
 
 
 4
 Before PREGERSON, T.G. NELSON, Circuit Judges, and LYNCH,* District Judge.
 
 
 5
 LYNCH, District Judge.
 
 INTRODUCTION
 
 6
 Plaintiffs/appellants American Ad Management, Inc. and O'Connor Agency (collectively "American") originally filed separate complaints against defendants/appellees General Telephone Company of California and related companies (collectively "GTE"). These complaints alleged various federal anti-trust violations, as well as supplemental state claims.[1] The two cases, which arose out of the same course of conduct by GTE, were consolidated by the district court and summary judgment was granted in favor of GTE in both cases. American timely filed its notice of appeal, and therefore jurisdiction in this Court is proper under 28 U.S.C. § 1291. We reverse and remand.
 
 
 7
 American is an Authorized Selling Representative ("ASR") which sells advertising in phone directories which are commonly known as "yellow pages." GTE is a publisher of yellow pages. Although the characterization of this relationship is the subject of much of the present dispute, at this point it will suffice to note that customers may purchase yellow pages advertising either directly from a publisher such as GTE, or through the use of an ASR such as American.
 
 
 8
 On March 15, 1994, the district court granted summary judgment against American Ad Management based on all three prongs of the rule of reason analysis under 15 U.S.C. § 1. On August 5, 1994, the district court granted summary judgment against the O'Connor Agency also based on all three prongs of the rule of reason analysis.
 
 BACKGROUND
 
 9
 Although the parties disagree as to how they should be characterized, the actual facts of this case are largely undisputed. Publishers of yellow pages, such as GTE, have established a dual distribution system in which an advertisement can be purchased either directly from the publishers or from an ASR, such as American. After an advertiser places an order with an ASR, the ASR will purchase the requested space from the publisher at a lower price than is available to the general public. This price difference is referred to as the "ASR's commission." In practice, ASRs often charged their customers a price which was lower than the price the advertiser would have paid had they bought directly from the publisher. This practice was known as "discounting." In effect, discounting was an attempt by the ASRs to exchange a portion of their profits per sale in the hopes of generating more sales.
 
 
 10
 GTE belongs to a trade association of yellow pages publishers known as the Yellow Pages Publishers Association ("YPPA"). Among other functions, YPPA provides uniform definitions of national and local accounts for its members.[2] The present case was generated by American's allegation that in the summer of 1989, YPPA members, including GTE, agreed to change the definition of national accounts and to eliminate the practice of paying ASR commissions on local accounts.[3] American further alleges that the elimination of local account commissions had the purpose and effect of eliminating the ASRs' practice of discounting.
 
 
 11
 Although several antitrust laws were originally alleged, American has chosen to appeal only those issues which concern Section 1 of the Sherman Act, 15 U.S.C. § 1.[4] In order to prevail on a cause of action for violation of 15 U.S.C. § 1, a plaintiff must show (1) there was an agreement, conspiracy, or combination between two or more entities; (2) the agreement was an unreasonable restraint of trade under either a per se or rule of reason analysis; and (3) the restraint affected interstate commerce. Eichman v. Fotomat Corp., 880 F.2d 149, 161 (9th Cir.1989); T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626 (9th Cir.1987); see also NCAA v. Board of Regents of Univ. of Okla., 468 U.S. 85, 100, 104 S.Ct. 2948, 2959-60, 82 L.Ed.2d 70 (1984). In both of the underlying cases, the district court held that American had produced enough evidence to create a genuine issue of material fact regarding whether there was an agreement, combination, or conspiracy, which is the first of the three elements of a 15 U.S.C. § 1 cause of action. However, summary judgment in favor of GTE was granted on the basis of the second element, which is whether the agreement was an unreasonable restraint of trade.
 
 DISCUSSION
 
 12
 I. DISTRICT COURT PROPERLY APPLIED RULE OF REASON ANALYSIS
 
 
 13
 In this appeal, American argues that the district court erred in analyzing the alleged anti-competitive effect of the agreement by using a "rule of reason," rather than a "per se" analysis.
 
 A. LEGAL STANDARDS
 
 14
 "A per se rule is applied when 'the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output.' " NCAA v. Board of Regents of Univ. of Okla., 468 U.S. 85, 100, 104 S.Ct. 2948, 2959, 82 L.Ed.2d 70 (1984) (quoting Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 19-20, 99 S.Ct. 1551, 1562-63, 60 L.Ed.2d 1 (1979)).
 
 
 15
 Over the years, certain categories of agreements or practices have been held to be within the per se category. For instance, horizontal price fixing, division of markets, group boycotts, tying arrangements, and output limitations are ordinarily held to be unreasonable restraints on trade under the per se approach. Northern Pacific Railroad Co. v. United States, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958); see also NCAA v. Board of Regents, 468 U.S. at 100, 104 S.Ct. at 2959-60. The Supreme Court has repeatedly explained that the per se approach is not to be readily expanded to new arrangements or to business relationships with which the courts are inexperienced. Federal Trade Commission v. Indiana Federation of Dentists, 476 U.S. 447, 458-59, 106 S.Ct. 2009, 2017-18, 90 L.Ed.2d 445 (1986); NCAA v. Board of Regents, 468 U.S. at 100, 104 S.Ct. at 2959-60; Broadcast Music, Inc., 441 U.S. at 9-10, 99 S.Ct. at 1556-58.
 
 
 16
 In the present case, American argues that the district court should have applied the per se approach because the publishers' agreement to eliminate commissions on local accounts, which eliminated the practice of discounting, should have been classified as horizontal price fixing. American primarily relies on United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940) (arrangements with the purpose and effect of fixing prices are to be analyzed under the per se approach) and Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643, 100 S.Ct. 1925, 64 L.Ed.2d 580 (1980) (wholesalers' agreement to eliminate short-term trade credit for retailers constitutes price fixing and therefore requires the per se approach).
 
 B. ANALYSIS
 
 17
 As stated earlier, the issue of whether the agreement to eliminate ASR commissions on local accounts constitutes price fixing, thereby requiring application of the per se approach is largely determined by the true nature of the publisher/ASR relationship. In an attempt to fall under the per se approach in Catalano, American characterizes the ASRs as "sellers" or "retailers" who purchase advertising space from the yellow pages publishers with "price discounts" and then resell it to the end consumer. In contrast, GTE argues that the ASRs are "agents" who simply receive a "commission" for acting as salespersons for the yellow pages.
 
 
 18
 For the reasons stated below, this Court believes that the district court did not err in choosing to apply the rule of reason analysis. Under the facts of this case, the decision to eliminate the commissions paid to the ASRs on local accounts does not constitute traditional price fixing because the relationship is one of agency, not wholesale/retail. Accordingly, the present case does not fall under the per se approach under Socony-Vacuum and Catalano.
 
 
 19
 1. PUBLISHER/ASR RELATIONSHIP IS GENUINE AGENCY
 
 
 20
 As stated earlier, the true nature of the publisher/ASR relationship is highly determinative of the issue of whether the per se or rule of reason approach should apply. Turning to the specifics of the relationship, the Court concludes that the relationship is one of genuine agency, not wholesale/retail. First, ASRs do not purchase advertising space in bulk or hold inventories as traditional retailers do. Second, ASRs must submit a request for a specific advertisement to the publisher which ultimately determines whether the advertisement will be accepted. And finally, the publishers bear the risk that an insufficient number of advertisements will be sold to make a directory profitable. In short, American's wholesale/retail arguments must fail because there is no product that is produced by a wholesaler and then distributed by a retailer. The relationship is one of agency.
 
 
 21
 These same factors were relied upon by the Eleventh Circuit in rejecting a wholesale/retail characterization of the publisher/ASR relationship in Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp., 849 F.2d 1336, 1345-48 (11th Cir.1987). Although this case technically involved Section 2 of the Sherman Act, 15 U.S.C. § 2, this Court finds its discussion of the publisher/ASR relationship to be highly persuasive.[5]
 
 
 22
 Relying on United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362 (1926) for the proposition that a genuine agency relationship falls outside the per se rule of retail price maintenance, the Ad-Vantage court rejected the wholesale/retail analogy proposed by the ASRs because (1) the market structure of yellow pages is such that there is no product that is produced and then distributed and (2) the ASRs are agents of the publishers. Ad-Vantage, 849 F.2d at 1345-48.
 
 
 23
 Specifically, the Ad-Vantage court found the following factors of the yellow pages industry to be determinative:
 
 
 24
 The publisher lawfully establishes the price for its advertising and announces it to the public. It determines when it is going to publish directories, and has the ultimate say on how many advertisements it will accept. An advertiser may deal directly with the publisher, or may use an Authorized Selling Representative. However, should it use an ASR, the ASR must submit a request for advertising to the publisher, analogous to a reservation in the forthcoming publication. The ASR does not purchase an inventory of yellow pages space. The service which the advertiser has paid for is performed by the publisher, not the ASR. Further, should the advertisement fail to appear as requested in the appropriate directory, the publisher is under an obligation to refund the advertiser's money. Finally, should a publisher not receive enough advertisements to make a directory profitable, it must still publish the directory; the publisher retains the "risk" that not enough yellow pages advertisements will be "distributed"-not the ASRs.
 
 
 25
 Ad-Vantage, 849 F.2d at 1346. As discussed above, this Court is also persuaded by these factors in the present case.
 
 
 26
 This Court also agrees with the Ad-Vantage court in finding Illinois Corporate Travel, Inc. v. American Airlines, 806 F.2d 722 (7th Cir.1986) to be "particularly instructive" in analyzing the publisher/ASR relationship.[6] Ad-Vantage, 849 F.2d at 1346. In Illinois Corporate Travel, American Airlines refused to allow McTravel Travel Services to continue to write tickets for American Airlines' flights for the admitted purpose of stopping McTravel Travel Services' practice of advertising that they were rebating a portion of their commission to the consumer. After discussing such industry factors as lack of inventory and risk of loss, the court determined that travel service companies were agents of the airlines. Accordingly, American Airlines was not subject to the per se prohibition against retail price maintenance. Illinois Corporate Travel, 806 F.2d at 725-26.
 
 
 27
 This Court finds the publisher/ASR relationship to be highly analogous to the relationship between travel agents and airline companies. Ad-Vantage, 849 F.2d at 1346. For instance, neither ASRs nor travel service companies carry inventories or purchase in bulk. Additionally, yellow pages publishers bear the risk of unsold advertisements much like airlines bear the risk of unfilled seats. In short, ASRs do not compete with publishers in the sale of yellow pages advertising, rather the relationship is one of agency.[7]
 
 2. SOCONY AND CATALANO
 
 28
 The flip side of the above discussion is American's attempt to analogize the present case to established case law in which the per se approach is applied to price fixing in the wholesale/retail arena. First, it cannot be disputed that a horizontal agreement to fix prices requires application of the per se approach under Section 1 of the Sherman Act. The leading case for this proposition is United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). In Socony, the agreement which triggered application of the per se approach involved purchasing surplus gasoline on the spot market for the purpose and with the effect of fixing prices. Id. In order to justify the application of the per se approach based solely on the Socony case, the publishers would have had to agree to directly fix the price paid by the advertiser. Of course, there was no such agreement in the present case.
 
 
 29
 However, over the years the Socony case has been extended to other factual circumstances. One of these cases, Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643, 100 S.Ct. 1925, 64 L.Ed.2d 580 (1980), provides American with the heart of its argument for application of the per se approach. In Catalano, the Supreme Court applied the per se approach to a horizontal agreement by wholesalers to eliminate short term credit sales to their retailers. Finding that credit terms were an inseparable part of the price, the Supreme Court went on to apply the per se approach to an agreement between wholesalers to fix prices charged to retailers.
 
 
 30
 In an attempt to fall under Catalano, American has argued that the publisher/ASR relationship is one of wholesaler and retailer. This Court is not convinced. As discussed more fully above, the Court finds that the true nature of the relationship is one of agency. Furthermore, the Court is cognizant of the Supreme Court's repeated statements that the per se approach is not to be extended to new factual situations. See Indiana Federation of Dentists, 476 U.S. at 458-59, 106 S.Ct. at 2017-18 (1986); NCAA v. Board of Regents, 468 U.S. at 100, 104 S.Ct. at 2959-60; Broadcast Music, Inc., 441 U.S. at 9-10, 99 S.Ct. at 1556-58. Because the facts of this case are substantially different from Catalano, the district court was correct in deciding to employ the rule of reason approach.
 
 C. SUMMARY
 
 31
 After having spent much effort on determining the true nature of the publisher/ASR relationship, it is helpful to remember that ultimately the per se approach can only be applied to an agreement which "facially appears to be one that would always or almost always tend to restrict competition and decrease output." NCAA v. Board of Regents of Univ. of Okla., 468 U.S. 85, 100, 104 S.Ct. 2948, 2959, 82 L.Ed.2d 70 (1984) (quoting Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 19-20, 99 S.Ct. 1551, 1562-63, 60 L.Ed.2d 1 (1979)). The standard is not that this agreement would more likely than not affect competition. Moreover, the inquiry is not whether it would have been possible for GTE to have eliminated commissions on local accounts without agreeing with its competitors.
 
 
 32
 While it is by no means inconceivable that the elimination of the practice of discounting will increase the prices paid by advertiser, this Court cannot conclude that it would always or almost always do so. It is entirely possible that now that the publishers are no longer paying commissions to ASRs some of these savings will be passed along to the consumer in an effort to compete with the other publishers. In other words, the publishers themselves may "discount" their prices in order to increase sales.
 
 
 33
 In conclusion, the district court did not err in deciding to apply the rule of reason approach because (1) the particular agency relationship in this case cannot be properly analogized to the wholesale/retail relationship found in Catalano and (2) the agreement to eliminate ASR commissions on local accounts is not the type that will always or almost always restrain competition.[8]
 
 
 34
 II. DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR GTE
 
 
 35
 American also argues that even under a rule of reason analysis, the district court erred in granting summary judgment in favor of GTE. This Court reviews de novo the district court's entry of summary judgment for GTE. Hayden v. Reickerd, 957 F.2d 1506, 1508 (9th Cir.1992). Specifically, the Court must view the evidence in the light most favorable to American and then determine whether there are any genuine issues of material fact and whether the district court applied the correct substantive law. Id. It should also be noted that because antitrust cases consist of primarily factual issues, summary judgment should be used "sparingly." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).
 
 
 36
 As discussed above, a cause of action under 15 U.S.C. § 1 consists of the following three elements: (1) an agreement, conspiracy, or combination between two or more entities; (2) an unreasonable restraint of trade under either a per se or rule of reason analysis; and (3) the restraint affected interstate commerce. Eichman, 880 F.2d at 161; T.W. Electrical Service, 809 F.2d 626; see also NCAA v. Board of Regents, 468 U.S. 85, 104 S.Ct. 2948, 82 L.Ed.2d 70.
 
 A. AGREEMENT, CONSPIRACY, OR COMBINATION
 
 37
 In both of the underlying cases, the district court held that American had produced enough evidence regarding an agreement, conspiracy, or combination to create a genuine issue of material fact, and thereby survive summary judgment. Surprisingly, both parties have devoted substantial portions of their appellate briefs to this element, which clearly was not the basis for the granting the GTE's motion for summary judgment. For the reasons stated below, this Court finds that the district court was correct in holding that American had produced sufficient evidence to create a genuine issue of material fact regarding the element of agreement, conspiracy, or combination.
 
 
 38
 The following evidence was specifically relied upon by the district court; (1) a May 17, 1989 letter from Mr. Paul Willis ("Willis"), a GTE vice-president, to the president of YPPA requesting that national accounts be discussed at the next meeting, (2) a July 7, 1989 letter from Willis to GTE management recommending the elimination of ASR commissions on local accounts "to more closely align [GTE] with the standard practices and procedures already established in the Yellow Pages industry," (3) a July 19, 1989 letter from GTE to the ASRs stating that commissions on local accounts will be eliminated, (4) an attachment to a November 9, 1989 letter from GTE to the ASRs which indicates that most other publishers have also agreed to eliminate commissions on local accounts, and (5) the deposition of Ken Stallings, a GTE employee, who testified that the purpose of the November 9, 1989 attachment was to show "consistency" which was that "most major publishers did not accept accounts that didn't have a minimum standard, which is the YPPA minimum standard."
 
 
 39
 This Court finds that this evidence alone is sufficient to find that a genuine issue of material fact exists concerning whether there was an agreement, conspiracy, or combination. However, in its appellate briefs, American has pointed to even more evidence in the record regarding the existence of a conspiracy. For instance, there is some evidence that as early as 1987 GTE officials were urging other publishers to take a "united front" regarding commissions on local accounts. In addition, American presented a YPPA document which lists a "strong concern about the practice of discounting."
 
 
 40
 GTE argues that because American has relied exclusively on circumstantial evidence of the conspiracy element, the Court must apply the special rule of Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) regarding the limited range of permissible inferences from circumstantial evidence. In Matsushita, the Supreme Court stated:
 
 
 41
 [C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of anti trust conspiracy.... To survive a motion for summary judgment or for a directed verdict, a plaintiff ... must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently.
 
 
 42
 Id. at 588, 106 S.Ct. at 1356 (quoting Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764, 104 S.Ct. 1464, 1470-71, 79 L.Ed.2d 775 (1984) (internal citation omitted)). Where plaintiff has presented only circumstantial evidence of a conspiracy, defendant may discharge its initial summary judgment burden by "proffering a 'plausible and justifiable' alternative interpretation of its conduct that rebuts the plaintiff's allegation of conspiracy." T.W. Electrical Service, 809 F.2d at 632 (quotations omitted). If defendant meets this initial burden, then plaintiff must come forward with evidence that is "capable of sustaining a rational inference of conspiracy and that tends to exclude the possibility that the defendant acted independently." Id.
 
 
 43
 Assuming arguendo that (1) American has relied exclusively on circumstantial evidence and (2) GTE has met its initial burden, the Court finds that the evidence presented is "capable of sustaining a rational inference of conspiracy and [ ] tends to exclude the possibility that the defendant acted independently." Id. In other words, American has presented evidence of such a quantity and nature that a reasonable jury could conclude that GTE did not decide to eliminate certain ASR commissions independently, but rather did so in agreement, conspiracy, and combination with the other publishers.
 
 
 44
 In short, American has presented more than sufficient evidence to create a genuine issue of material fact regarding the existence of an agreement, conspiracy, or combination.
 
 B. UNREASONABLE RESTRAINT OF TRADE
 
 45
 As discussed above, the district court correctly decided to apply the rule of reason analysis, as opposed to the per se approach, to determine if the agreement in question constitutes an unreasonable restraint of trade. The rule of reason analysis consists of three components: (1) the persons or entities to the agreement intend to harm or restrain competition; (2) an actual injury to competition occurs; and (3) the restraint is unreasonable as determined by balancing the restraint and any justifications or pro-competitive effects of the restraint. Oltz v. St. Peter's Community Hospital, 861 F.2d 1440, 1445 (9th Cir.1988).
 
 1. INTENT
 
 46
 American argues that the publishers' intent was to eliminate the practice of discounting, which is tantamount to an intent to harm competition. As evidence, American points to a YPPA document which lists a "strong concern about the practice of discounting." There is also some deposition testimony to this effect. As discussed above, discounting refers to the ASRs' practice of cutting into their commissions in order to sell at a lower price. In light of this evidence, the Court is convinced that American has established a genuine issue of material fact regarding whether GTE intended to eliminate the practice of discounting.
 
 
 47
 The question now becomes whether an intent to eliminate the practice of discounting is tantamount to an intent to restrain competition. The elimination of discounting does appear likely to increase the prices paid by the end consumer. Moreover, the Court recognizes that the issue of intent is one that is usually left to the jury. See id. at 1449. Viewing the evidence in the light most favorable to American, a reasonable jury could conclude that GTE intended to eliminate the practice of discounting, and therefore it intended to harm competition by increasing the prices paid by the end consumer. In other words, the district court erred in finding no genuine issue of material fact regarding intent.
 
 2. ACTUAL HARM
 
 48
 The second requirement to establish an unreasonable restraint of trade under the rule of reason approach is whether the agreement actually harmed competition. Once again, American claims that the district court erred in holding that there was no genuine issue of material fact on this issue.
 
 
 49
 First, American argues that the district court should have taken a "quick look" at such effects of the agreement because the agreement involves a "naked restraint on price and output." NCAA v. Board of Regents, 468 U.S. at 110, 104 S.Ct. at 2965. However, this so-called "quick look" analysis is the exception, rather than the rule. "Proving injury to competition in a rule of reason case almost uniformly requires a claimant to prove the relevant market and to show the effects of competition within that market." Oltz, 861 F.2d at 1446. For many of the same reasons used to apply the rule of reason analysis, the present case does not present the type of naked restraint on price or output that would justify a "quick look." Accordingly, the district court was correct in requiring proof of the relevant geographic and product markets, as well as proof of the effects within these markets. Oltz, 861 F.2d at 1445; Kaplan v. Burroughs Corp., 611 F.2d 286, 291 (9th Cir.), cert. denied, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).
 
 
 50
 a) Relevant Geographic and Product Markets
 
 
 51
 American asserts that the relevant geographic markets are various locations throughout the United States. American's expert defines the relevant geographic markets as "geographic areas typically served by particular telephone directories." The district court found this evidence insufficient to survive summary judgment because it was not specifically related to the particular publisher in this case, namely GTE. Although this Court agrees that American must eventually produce evidence of the specific geographic markets which GTE services, it cannot agree that summary judgment was justified on this ground.[9]
 
 
 52
 In addition, the declaration of American's expert did refer to the deposition of a GTE vice president by the name of Clint Pollard ("Pollard") for specifics regarding GTE. However, the district court explicitly refused to consider the evidence provided by Pollard because it was not submitted with American's opposition to GTE's motion for summary judgment. To whatever extent this was an error by American, it appears to be merely a matter of formality which American should have been given an opportunity to remedy. See Bulthuis v. Rexall Corp., 789 F.2d 1315, 1318 (9th Cir.1985).
 
 
 53
 As for the relevant product market, American's expert defined it as "yellow pages advertising." Although this is true as far as it goes, the district court seems to have expected a bit more analysis, support, and detail. Much of the expert's opinion in this regard refers to other evidence which the district court refused to consider because it was not presented to that court. American asserts that it should have been given a chance to cure this mistake. As with the issue of geographic markets, this Court feels that to whatever extent American's evidence regarding product markets is deficient, the problem is formalistic. Consequently, American should have been given an opportunity to remedy the deficiency. See id.
 
 
 54
 "Defining the relevant market is a factual inquiry ordinarily reserved for the jury." Oltz, 861 F.2d at 1446. In addition, the record in this case does contain sufficient evidence regarding the relevant geographic and product markets, even though all of it may not have been properly presented on summary judgment. Accordingly, this Court concludes that the district court erred in finding no genuine issue of material fact regarding the issue of relevant geographic and product markets. The relevant markets should be determined by a jury.
 
 
 55
 b) Effect on Relevant Market
 
 
 56
 In order to show actual anti-competitive effects within the relevant market, American argues that the agreement to eliminate ASR commissions on local accounts eliminated the practice of discounting, thereby increasing the prices paid by the end consumer.
 
 
 57
 In support of this proposition, American points to the testimony of their economic expert who opined that:
 
 
 58
 An agreement by the principal publishers of yellow pages directories not to accept "B" accounts has major anti-competitive consequences. While these advertisers must pay the same price for advertising now as they did before, they can no longer avail themselves of the services of a[ASR], which diminishes the effectiveness of their advertising. They lose an important and valuable service. On the other hand, if they pay for these services directly, their costs increase. In either case, there are higher prices paid for the advertising and services in aggregate by the amount of the [ASR] discount not received. Advertisers are harmed as a direct result of GTE Directories' anticompetitive conduct.
 
 
 59
 This expert opinion states that the elimination of discounts will increase the price of advertisements. Moreover, the expert sufficiently explained his process of reasoning and factually supported the opinion by previously describing the market structure of the yellow pages industry. See Mid-State Fertilizer Co. v. Exchange National Bank, 877 F.2d 1333, 1339 (7th Cir.1989). Because it is difficult to image a more typical example of anti-competitive effect than higher prices, the opinion of American's expert is sufficient to create a genuine issue of material fact regarding the issue of actual anti-competitive effect.
 
 3. BALANCING TEST
 
 60
 The third and final component of the rule of reason analysis involves whether the alleged restraint is "unreasonable." This is determined by balancing "the restraint and any justifications or pro-competitive effects of the restraint." Oltz, 861 F.2d at 1445.
 
 
 61
 In both of the underlying cases, the district court found that the agreement was not unreasonable under the balancing test. The district court explained that uncontroverted evidence established that GTE eliminated ASR commissions on local accounts in order to stimulate national advertising. This uncontroverted evidence primarily consisted of the deposition testimony of Mr. Wills, then Vice President of GTE National Marketing Services. Finding that this represented a valid business justification, the district court concluded that even assuming there was a restraint on trade, it was not an unreasonable one.
 
 
 62
 Because the district court granted summary judgment in favor of GTE on this balancing test, in order to affirm, this Court must agree that there is no genuine issue of material fact that GTE's actions were not unreasonable due to the valid business justification of wanting to increase sales of national accounts. This Court cannot so agree. Although GTE may indeed have been partially motivated by a desire to refocus the ASRs' attention on national accounts, the evidence also reasonably supports the conclusion that GTE was motivated, at least in part, by a desire to eliminate the practice of discounting.
 
 
 63
 Regardless, the motivation of GTE is not determinative of the balancing test. As we stated in Oltz, "the fact finder must balance the restraint and any justifications or pro-competitive effects of the restraint in order to determine whether the restraint is unreasonable." Oltz, 861 F.2d at 1445 (emphasis added). The law clearly envisions that the balancing test is normally reserved for the jury. As with all questions of fact, summary judgment is only appropriate if after viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact.
 
 
 64
 In the present case, GTE has proposed that refocusing the ASRs on national accounts justifies any restraint on trade that may have occurred. However, whether this is valid justification which also outweighs any restraint on trade is a question of fact that should properly be decided by the jury. There is a genuine issue of material fact in that a reasonable jury could find that the harm to consumers in the form of higher prices outweighs any justification based on the desire to redirect the ASRs' efforts towards the sale of national accounts. Accordingly, the district court erred in granting summary judgment in favor of GTE on the issue of the balancing test.
 
 4. SUMMARY
 
 65
 After considering the evidence in the light most favorable to American, there do appear to genuine issues of material fact regarding (1) intent, (2) actual harm, and (3) the reasonableness balancing test. Therefore, the district court erred in granting summary judgment on the basis of the element of unreasonable restraint on trade under the rule of reason analysis.
 
 C. INTERSTATE COMMERCE
 
 66
 The third and final essential element of a cause of action under 15 U.S.C. § 1 is that the restraint be in "trade or commerce among the several States or with foreign nations." 15 U.S.C. § 1.[10]
 
 
 67
 The Supreme Court in Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 330, 111 S.Ct. 1842, 1847, 114 L.Ed.2d 366 (1991) stated that, "proper analysis focuses, not upon actual consequences, but rather upon the potential harm that would ensue if the conspiracy were successful." The record in the present case contains sufficient evidence to create a genuine issue of material regarding the effect on interstate commerce. Specifically, the alleged conspiracy has the potential to affect interstate commerce because it was committed by the members of YPPA, which is a nation-wide organization of yellow pages publishers. In addition, the very purpose of advertising, especially national accounts, is to promote interstate commerce. See Ad-Vantage, 849 F.2d at 1343.
 
 
 68
 For these reasons, the Court finds a genuine issue of material fact exists regarding the element of interstate commerce.
 
 
 69
 III. DISTRICT COURT IMPROPERLY DISMISSED STATE CAUSES OF ACTION
 
 
 70
 In light of this Court's determination that summary judgment for GTE was improper on American's 15 U.S.C. § 1 cause of action, the district court erred in dismissing the supplemental state causes of action pursuant to 28 U.S.C. § 1267(c)(3).
 
 
 71
 Accordingly, the district court dismissal of the supplemental state law claims is reversed.
 
 CONCLUSION
 
 72
 As set forth above, genuine issues of material fact exist concerning whether GTE's actions constituted an unreasonable restraint of trade under 15 U.S.C. § 1. Accordingly, the matter is reversed and remanded for proceedings consistent with this opinion.
 
 
 73
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 On this appeal, American asserts only section 1 of the Sherman Act, 15 U.S.C. § 1, thereby waiving all other federal causes of action
 
 
 [2]
 In the industry, national accounts are also known as "A accounts," whereas local accounts are often referred to as "B accounts."
 
 
 [3]
 At the same time, GTE also raised the ASR commission for national accounts from 25% to 30%
 
 
 [4]
 15 U.S.C. § 1 states in relevant part:
 "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."
 
 
 [5]
 This court's decision to rely on a section 2 case such as Ad-Vantage is supported by the fact that the Ad-Vantage case itself relied heavily on Sherman Act Section 1 case law concerning retail price maintenance. Ad-Vantage, 849 F.2d at 1345-46
 
 
 [6]
 As with the Ad-Vantage case itself, this Court recognizes that Illinois Corporate Travel does not involve a horizontal agreement between competitors as does the present case. However, this distinction does not affect the strength of the analogy between the ASR/publisher relationship and the travel service company/airline relationship
 
 
 [7]
 American argues that Yellow Pages Cost Consultants v. GTE Directories, 951 F.2d 1158 (9th Cir.1991) stands for the proposition that ASRs do compete with publishers for the sale of advertising. However, Yellow Pages Cost Consultants must be distinguished from the case at hand because those plaintiffs were consultants which offered advice to businesses on effective yellow pages advertising. In fact, the actual holding of Yellow Pages Cost Consultants is that consultants were competitors of publishers in the market of advice. Id. at 1161. This is properly distinguishable from the present case because American does not argue that they compete in the market of advice. Plus, under the Ad-Vantage analysis, ASRs and publishers do not compete at all
 
 
 [8]
 It is important to note that the analysis to this point does not automatically mean that there has been no unreasonable restraint on trade. It only means that the district court correctly chose to apply the rule of reason, as opposed to the per se analysis
 
 
 [9]
 The Court suspects that the lack of specific information regarding the relevant geographic markets has been generated by the fact that although American has chosen to sue only GTE, its theory involves the members of YPPA, which is a nation-wide organization
 
 
 [10]
 In one of the underlying cases, the district court stated that, "Plaintiff has failed to provide this Court with any admissible evidence to establish that the alleged restraint actually affected interstate commerce." This Court is not entirely clear whether the district court was describing (1) the actual effect or (2) the lack of a link to interstate commerce
 Regardless, the Court will briefly address this point because American argued it in its appellate briefs. However, it should be noted that GTE chose not to argue it on appeal.