### In re EUROPEAN RAIL PASS ANTITRUST LITIGATION

**This Document Relates To: All Cases.**

**No. MDL–1386 WCC.**
**No. 00 Civ. 6911 (WCC).**

United States District Court,
S.D. New York.

Sept. 21, 2001.

Pomerantz Haudek Block Grossman & Gross LLP, New York City (Stanley M. Grossman, of Counsel), Plaintiffs' Liaison Counsel.

Reinhardt and Anderson, St. Paul, MN (Mark Reinhardt, Harvey H. Eckhart, Garrett D. Blanchfield, Jr., Amy M. Leonetti, of Counsel), Plaintiffs' Lead Counsel.

Finé, Kaplan and Black, R.P.C., Philadelphia, PA (Roberta D. Liebenberg, Donald L. Perelman, Jennifer L. Maas, of Counsel), Freedman Boyd Daniels Hollander Goldberg & Cline P.A., Albuquerque, NM (Joseph Goldberg, of Counsel), for Plaintiffs.

Gibson, Dunn & Crutcher LLP, New York (Daniel J. Fetterman, of Counsel), Gibson, Dunn & Crutcher LLP, Washington, D.C. (Michael Denger, Deborah J. Katz, Richard B. Benenson, of Counsel), for Defendant Rail Europe Group, Inc.

McBride Baker & Coles, Chicago, IL (Malcolm H. Brooks, George M. Sanders, of Counsel), Wilmer, Cutler & Pickering, New York City (Paul A. Engelmayer, of Counsel), for Defendant Dertour America, Inc. f/k/a DER Travel Service, Inc.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs Hisa Travel Service, 10–N–10 Travel, Inc. and Panorama Travel, Inc., on behalf of themselves and other members of the class consisting of United States travel agents, bring this class action against defendants Rail Europe Group, Inc. ("REG"), a Delaware corporation, and DERTOUR America, Inc., f/k/a DER Travel Service, Inc. ("DER"), a California corporation, pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1, alleging a combination and conspiracy in unreasonable restraint of trade and commerce. Defendants now move to dismiss the Amended Consolidated Class Action Complaint pursuant to FED. R. CIV. P. 12(b)(6) and, in the alternative, move for a more definite statement pursuant to FED. R. CIV. P. 12(e). For the reasons stated hereinafter, defendants' motions are denied.

## BACKGROUND

The Amended Complaint alleges the following:

Defendants are "major wholesalers" of travel services that include, *inter alia*, European Rail Passes, which permit train travel within participating European countries. (¶¶ 5, 20.) The European Rail Passes include both single and multi-country passes, such as the Eurail Pass and the Europass. (¶ 5.) Plaintiffs are United States travel agents who are paid commissions by defendants for selling the European Rail Passes. (¶¶ 5, 20.) The majority of the European Rail Passes sold in the United States are sold through travel agents. (¶ 21.)

In mid–1997, Heinz Wesner, president of DER (¶ 23), and Barbara Schmidt, a corporate officer of DER, agreed with certain corporate officers of REG to lower the commissions paid to travel agents who sold European Rail Passes. (¶ 22.) Thereafter, defendants learned that the United States Department of Justice was investigating them, prompting Wesner to schedule a meeting between the two defendants to discuss how to conceal the price-fixing scheme. (¶ 23.) Wesner urged the parties to admit that they discussed price fixing of minor importance, but to deny any allegation that they agreed to fix the amount of commissions paid to the travel agents. (*Id.*) In May 1999, DER shredded documents that, upon plaintiffs' information and belief, evidenced the conspiracy. (¶ 24.)

Plaintiffs allege that defendants' acts have had the following effects:

(a) competition in the commissions payable to travel agents for the sale of European Rail Passes by defendant[s] ... has been restrained, suppressed and eliminated throughout the United States;

(b) commissions payable to travel agents for the sale of European Rail Passes by defendants ... have been fixed, maintained and stabilized at artificially low and noncompetitive levels throughout the United States; and

(c) travel agents paid upon commission for the sales of European Rail Passes from defendants ... have been deprived of the benefit of free and open competition.

(¶ 33.) Plaintiffs allege that they received lower commissions for the sale of European Rail Passes than they would have received in the absence of the conspiracy between defendants. (¶ 34.)

## DISCUSSION

### I. *Motion to Dismiss Standard*

On a motion to dismiss brought pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993). On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978).

However, it is recognized that "[t]o this landscape must be added the caveat that 'dismissals on the pleadings are especially disfavored in antitrust cases.'" *Broadcast Music, Inc. v. Hearst/ABC Viacom Entm'ts Servs.*, 746 F.Supp. 320, 325 (S.D.N.Y.1990) (quoting *Schwartz v.*

*Jamesway Corp.*, 660 F.Supp. 138, 141 (E.D.N.Y.1987)). Moreover, there is no special burden on a plaintiff alleging antitrust violations. *See In re Nine West Shoes Antitrust Litig.*, 80 F.Supp.2d 181, 185 (S.D.N.Y.2000). "Our Circuit has stated that 'a short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules.'" *Id.* (quoting *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir.1977)).

## II. Section 1 of the Sherman Act

Section 1 of the Sherman Act provides, in pertinent part, that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. However, only unreasonable restraints are actionable under the antitrust laws. *See State v. Saint Francis Hosp.*, 94 F.Supp.2d 399, 411 (S.D.N.Y.2000) (Conner, J.) (citing *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing, Co.*, 472 U.S. 284, 289, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985)). To state a claim under Section 1 of the Sherman Act, a plaintiff must allege a combination or concerted action between at least two entities that unreasonably restrains interstate or foreign commerce. *See Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95–96 (2d Cir.1998). In this case, because plaintiffs allege that defendants met to discuss lower commissions and that commissions were thereafter actually lowered, plaintiffs have sufficiently alleged a conspiracy. *See Ambook Enters. v. Time Inc.*, 612 F.2d 604, 614 (2d Cir.1979) (holding that an express agreement need not be alleged in order to prove a conspiracy). Moreover, plaintiffs clearly stated that defendants were distinct companies. (Am.Complt.¶¶ 9–10.)

The issue in this case is whether plaintiffs sufficiently alleged that the lowering of commissions constitutes an unreasonable restraint. A resolution of this issue involves a determination whether the alleged restraint is *per se* unlawful or whether it is governed by Rule of Reason analysis. *See Saint Francis Hosp.*, 94 F.Supp.2d at 411. "'The majority of allegedly anticompetitive conduct continues to be examined under the [R]ule of [R]eason.'" *CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74, 80 (2d Cir.1999) (quoting *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49–50, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977)).

Restraints are *per se* violative of the antitrust laws when they are "obviously anticompetitive." *Bogan v. Hodgkins*, 166 F.3d 509, 514 (2d Cir.1999), *aff'g in relevant part, Bogan v. Northwestern Mut. Life Ins., Co.*, 953 F.Supp. 532 (S.D.N.Y. 1997) (Conner, J.). "[C]ertain agreements or practices which because of the pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without any elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Id.* (quoting *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)). Because *per se* liability is imposed only when the Court can "predict with confidence that the [R]ule of [R]eason will condemn it," *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 344, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982), "[c]ourts have been reluctant to expand the categories of *per se* illegality." *Bogan*, 166 F.3d at 514. These categories include both horizontal and vertical price fixing, group boycotts, division of markets and tying arrangements. *See Northern Pac. Ry.*, 356 U.S. at 5, 78 S.Ct. 514; *In re Nine West Shoes*, 80 F.Supp.2d at 188

("[H]orizontal price-fixing is considered a *per se* violation of the antitrust laws because 'every such horizontal arrangement among competitors poses some threat to the free market.'") (quoting *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 434, 110 S.Ct. 768, 107 L.Ed.2d 851 (1990)).

 Under Rule of Reason analysis, "a plaintiff must initially show that 'the challenged action had an *actual* adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice.'" *Tops Mkts.*, 142 F.3d at 96 (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir.1993) (emphasis in original)); *see Electronics Communications Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 244 (2d Cir. 1997). The relevant product market must be identified, and the plaintiff must " 'allege how the net economic effect of the alleged violation is to restrain trade in the relevant market, and that no reasonable alternate source is available' to consumers in that market." *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F.Supp.2d 228, 237 (S.D.N.Y.1999) (quoting *International Television Prods. Ltd. v. Twentieth Century–Fox Television*, 622 F.Supp. 1532, 1534 (S.D.N.Y.1985)). In this case, the effect on the relevant market of the alleged fixing of travel agent commissions is clearly alleged. Although the Amended Complaint does not specifically allege that there were not other distributors from whom plaintiffs could receive a higher commission for the sale of European Rail Passes, this is clearly implied because the complaint does allege "on information and belief" that defendants "control the wholesaling of European Rail Passes in the United States" (Am.Complt.¶ 13) and that "travel agents paid upon commission for the sales of European Rail Passes from defendants Rail Europe and DER have

been deprived of the benefit of free and open competition." (*Id.* ¶ 33(c).) These allegations are sufficient to withstand a motion to dismiss. Whether they can be proven, of course, remains to be seen.

 Further, plaintiffs contend that because the situation here involves horizontal price fixing, which is *per se* unlawful, they are relieved of alleging an unreasonable restraint on competition. *See K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, No. 92 Civ. 1167, 1994 WL 250115, at *3 n. 3 (S.D.N.Y. June 1, 1994) (differentiating horizontal restraints, which are agreements between competitors at the same level of the market structure, from vertical restraints, which are agreements between persons at different levels of the market structure, *e.g.*, manufacturers and distributors), *aff'd*, 61 F.3d 123 (2d Cir.1995). However, defendants argue that because the relationship between them is one of agency, the alleged unlawful agreement falls outside the scope of *per se* liability and is governed by the Rule of Reason. *See United States v. General Elec. Co.*, 272 U.S. 476, 488, 47 S.Ct. 192, 71 L.Ed. 362 (1926). "[T]here can be no antitrust violation without a competitor, and agents do not compete with those whom they represent." *Ad–Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1346 (11th Cir.1987). In support of their position that the instant relationship was one of agency, defendants rely on Second Circuit precedent as well as decisions from the Seventh, Ninth and Eleventh Circuit Courts of Appeals. However, none of those cases is controlling or persuasive here.

In *Bogan*, the Second Circuit held that it was not *per se* unlawful for all the general agents selling Northwest Mutual insurance policies in the New York area to agree that none of them would hire away the subagents of other Northwest Mutual gen-

eral agents within that area. *See* 166 F.3d at 511–12, 515. The court of appeals concluded that the agreement was "not a classic interfirm horizontal restraint of trade in insurance sales agents," but was more "akin to an *intra* firm agreement" and concluded that "[t]he agreement here is far from a typical *per se* illegal restraint, consistent with the fact that antitrust law shows more concern to protect inter rather than intrabrand competition." *Id.* at 515 (emphasis in original). Thus, the complaint was dismissed because the relevant market was not Northwest Mutual general agents but all life insurance general agents in the New York area. Plaintiffs were not foreclosed from that broader market because they could get jobs as agents for other life insurance companies. *Per se* treatment was not denied because of an agency relationship between plaintiffs and defendants, as is alleged here, but because of the intra-company relationship between the general agents and the consequent limited effect of their non-raiding agreement.

In *American Ad Management, Inc. v. GTE Corp.*, 92 F.3d 781 (9th Cir.1996), the plaintiffs were Authorized Selling Representatives ("ASRs") who sold advertising in phone directories, the "yellow pages." *See id.* at 783. Pursuant to the arrangement entered into by the ASRs and publishers of the yellow papers, which included the defendants General Telephone Company of California and related companies (collectively "GTE"), customers could purchase advertising either directly from a publisher or from an ASR. *See id.* If a customer proceeded through an ASR, the ASR would receive a commission from the publisher. *See id.* To entice customers to purchase advertising through them, the ASRs engaged in a practice commonly known as "discounting," whereby they would charge their customers a lower price than that charged by the publishers. *Id.* at 783–84. To eliminate the ASRs' "discounting," GTE and other publishers agreed to cease paying any commissions to the ASRs. *See id.* at 784. This was in effect an agreement not to use ASRs, because the ASRs obviously would not work without compensation.

The district court employed Rule of Reason analysis. The Ninth Circuit Court of Appeals affirmed, concluding that the parties were engaged in a general agency relationship. *See id.* at 785. Specifically, it reasoned:

> First, ASRs do not purchase advertising space in bulk or hold inventories as traditional retailers do. Second, ASRs must submit a request for a specific advertisement to the publisher which ultimately determines whether the advertisement will be accepted. And finally, the publishers bear the risk that an insufficient number of advertisements will be sold to make a directory profitable.

*Id.*

The Ninth Circuit relied on the Eleventh Circuit's decision in *Ad-Vantage Tel. Directory Consultants*,[1] which dealt with similar facts, as well as Judge Easterbrook's analysis in *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d 722 (7th Cir.1986). *See also Electronics Communications*, 129 F.3d at 243–44 (citing *Illinois Corporate Travel* and the application of the Rule of Reason to the "dual distribution" scheme). In *Illinois Corporate Travel*, the defendant, American Airlines, prohibited one of its travel agents, the plaintiff, McTravel Travel Services,

---

1. *Ad–Vantage Tel. Directory Consultants* was brought pursuant to Section 2 of the Sherman Act, but was relied on by *American Ad Mgmt.* because it cited mainly Section 1 retail price maintenance precedent. *See American Ad Mgmt.*, 92 F.3d at 785 n. 5 (citing *Ad–Vantage Tel. Directory Consultants*, 849 F.2d at 1345–46).

from issuing any of its airline tickets because McTravel refused to refrain from advertising that it would rebate a portion of its 10% commission. *See* 806 F.2d at 724. As a result, McTravel sought a preliminary injunction on the basis that American had violated the *per se* prohibition against resale price maintenance, which the district court declined to issue. *See id.* The district court concluded that American Airlines was not *per se* liable because the plaintiffs were general agents. *See id.* at 725. Its factual findings were as follows:

An air carrier establishes and announces to the public a price for its service. The airline determines the number and destination of flights and the equipment to be used on each. A traveler may reserve seats directly from the airline or through a travel agent; in either case the reservation is likely to be made on a computer that records the number of seats remaining on a flight and the price of each. The travel agent must obtain the airline's clearance (by computer) to book a flight. The agent does not purchase a seat for resale and does not hold an inventory of seats.... The airline or any agent in the country can sell the same seat. It remains available until reserved—and sometimes even after, for air carriers "overbook" to deal with no-shows. The traveler with a ticket goes to the airport and is served directly by the airline. If the traveler does not show up, the seat may fly empty and the airline loses the sale.... The travel service operator takes no risk of unfilled seats or of the many problems, from mechanical difficulties to weather, that may make the airline unable to deliver transportation as promised. The airline takes all credit risks on the credit cards it accepts. True, as McTravel argues, the travel agent loses its commission when the traveler does not show and has his ticket refunded, but this is true of any agent when a sale falls through.

The relation of travel agent to airline is not substantially different from the relation of broker to real estate owner, of brokerage house to investor, or of travel agent to hotel, rental company, or other provider of travel services.

*Id.* at 725.

On appeal, Judge Easterbrook held that the record supported the district court's conclusion of a general agency. *See id.* However, Judge Easterbrook expressly stated that "conclusions that depend on the record compiled so far might be altered if additional facts adduced at trial show that the district court has mischaracterized the nature of the relation between airlines and travel service operators," and that because American and its agents were not of the same firm, "[c]ollaboration among dealers orchestrated through American therefore might establish a *per se* violation." *Id.* at 726. He thus clearly implied that if, as is alleged in this case, there was a horizontal price-fixing agreement between suppliers who effectively controlled the market, there would be a *per se* violation of Section 1. We strongly agree. We therefore conclude that the rulings in *American Ad Management* and *Illinois Corporate Travel* cannot properly be applied to the facts alleged in this case. If those facts cannot be proven, of course, plaintiffs will not ultimately prevail.

■ Furthermore, all of the above-mentioned cases found a general agency only after a complete record was developed. Contrary to defendants' attempts to persuade us otherwise, it is well settled that on a motion to dismiss, we are precluded from relying on factual allegations outside the Amended Complaint. Therefore, defendants' reliance on case law that discusses the relationship between defendants and travel agents, *see Eurail Cmty. v. Student Flights, Inc.,* 18 F.Supp.2d 332, 333 (S.D.N.Y.1998) (providing factual back-

ground that defendants are *distributors* for the Eurail Community); *Rail Europe Inc. v. Rail Pass Express, Inc.*, No. 94 Civ. 1506, 1994 WL 330066, at *1 (S.D.N.Y. July 8, 1994), is misplaced. *See Faulkner v. Verizon Communications, Inc.*, No. 01 Civ. 1846, 2001 WL 880851, at *15 n. 9 (S.D.N.Y. Aug.3, 2001) (Conner, J.) ("although 'courts routinely take judicial notice of documents filed in other courts,' they do not do so to establish 'the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991)). Finally, "[a]lthough courts may convert a Rule 12(b)(6) motion into a motion for summary judgment without formal notice to the parties, it is generally inappropriate for a court to do so when, as here, the parties have not had the opportunity to complete discovery and have not requested conversion." *2 Broadway L.L.C. v. Credit Suisse First Boston Mortgage Capital L.L.C.*, No. 00 Civ. 5773, 2001 WL 410074, at *5 n. 3 (S.D.N.Y. Apr.23, 2001).

▆▆▆ Because this case is one of alleged horizontal price-fixing and therefore governed by *per se* analysis, it is well settled that "plaintiff is excused from defining the relevant product market." *Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.*, 40 F.Supp.2d 109, 116 (E.D.N.Y.1999). Therefore, we find that plaintiffs have stated a claim and defendants' motion to dismiss is denied.

### III. *Motion for a More Definite Statement*

▆▆▆ After the motion to dismiss was filed, defendants also moved for a more definite statement pursuant to FED. R. CIV. P. 12(e). Defendants argue that plaintiffs raised ambiguity in their memorandum in opposition to defendants' mo-

tion to dismiss by stating that defendants conspired with respect to a "variety of European rail travel passes and tickets." Defendants request this Court to order plaintiffs to clarify whether defendants sell the same set of products, *i.e.*, German rail passes, French rail passes, and Eurail passes, or whether defendants sell functionally similar competing products, *i.e.*, competing types of rail passes for travel in France; competing types of rail passes in Germany.

▆▆▆ Rule 12(e) provides "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." However, it is well settled that such motions "generally are disfavored because of their dilatory effect." *Markovic v. New York City Sch. Constr. Auth.*, No. 99 Civ. 10339, 2000 WL 1290604, at *3 (S.D.N.Y. Sep.13, 2000) (citations omitted). It "is designed to strike at unintelligibility rather than want of detail and ... allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." *Id.* (citations omitted). As this Court has previously explained, "[a] motion pursuant to Rule 12(e) should not be granted 'unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *ESI, Inc. v. Coastal Corp.*, 61 F.Supp.2d 35, 68 (S.D.N.Y.1999) (Conner, J.) (quoting *Tagare v. NYNEX Network Sys. Co.*, 921 F.Supp. 1146, 1153 (S.D.N.Y.1996)(Conner, J.)).

In this case, the Amended Complaint was not so excessively vague and ambiguous as to be unintelligible. Plaintiffs allege that defendants sold "single country

passes, and multi country passes including, but not limited to, the Eurorail Pass and the Europass." (Am.Complt.¶ 5.) It is clear that plaintiffs could have been referring to either the identical set of products or to functionally similar competing products. This is sufficient to satisfy the lenient standard of notice pleadings. If defendants assumed the wrong meaning when serving their motion to dismiss, their error will cause no ultimate prejudice to defendants and should not now prejudice plaintiffs. Accordingly, defendants' motion for a more definite statement is denied.

### CONCLUSION

For the aforementioned reasons, defendants' motions to dismiss and for a more definite statement are denied.

**SO ORDERED.**