In re BEER DISTRIBUTION
ANTITRUST LITIGATION

No. C 97–20644 SW.

United States District Court,
N.D. California,
San Jose Division.

Aug. 23, 1999.

Joseph W. Cotchett, Bruce L. Simon, Gwendolyn R. Giblin, Cotchett, Pitre & Simon, Burlingame, CA, Roger M. Schrimp, James F. Lewis, Michelle L. Christian, Damrell, Nelson, Schrimp, Pallios & Ladine, Modesto, CA, for plaintiffs.

George R. Corey, Jeffrey D. Manos, Dario de Ghetaldi, Corey, Luzaich, Manos & Pliscka, Millbrae, CA, for Huntington Beach Brewing Co. d/b/a Toro Brewing Co.

George R. Corey, Jeffrey D. Manos, Dario de Ghetaldi, Corey, Luzaich, Manos & Pliscka, Millbrae, CA, for Kenneth Allen d/b/a Anderson Valley Brewing Co.

James A. Hennefer, Law Offices of James A. Hennefer, San Francisco, CA, for Lake Tahoe Brewing Co., Inc. d/b/a Tahoe Basin Beverage Co.

Joseph W. Cotchett, Bruce L. Simon, Jack P. Hug, Steven C. Keller, Virginia E. Hewitt, Cotchett, Pitre & Simon, Burlingame, CA, Roger M. Schrimp, Kris L. Burks, Michelle L. Christian, Damrell, Nelson, Schrimp, Pallios & Ladine, Modesto, CA, for St. Stan's Brewing Company, Inc.

Peter E. Moll, Carmine R. Zarlenga, John J. Rosenthal, Howry & Simon, Washington,

DC, Robert P. Taylor, Edwin H. Wheeler, Howry & Simon, Menlo Park, CA, Richard M. Steuer, Kaye Scholer, Fierman, Hays & Handler, New York City, for Anheuser–Busch, Inc.

Daniel Kolditz, St. Louis, MO, General Counsel, Anheuser–Busch Inc.

## ORDER RE: PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION

SPENCER WILLIAMS, District Judge.

Plaintiffs Huntington Beach Brewing Company d/b/a El Toro Brewing Company ("El Toro"), Kenneth Allen d/b/a Anderson Valley Brewing Company ("Anderson Valley"), Lake Tahoe Brewing Company, Inc. d/b/a Tahoe Basin Beverage Company ("Lake Tahoe"), and St. Stan's Brewing Company ("St. Stan's") each filed separate class action complaints against Defendant Anheuser–Busch, Inc. ("Anheuser–Busch", "AB" or "A–B") alleging claims under various federal anti-trust statutes. Following consolidation of these four separate actions, Plaintiffs moved for certification of their consolidated class action complaint. The Court denied that motion. *See* Order Denying Without Prejudice Plaintiffs' Motion for Class Certification, dated November 10, 1998. Plaintiffs subsequently sought and received leave of Court to amend their consolidated complaint. *See* Order Granting Plaintiffs' Motion For Leave to File Amended Complaint, dated February 18, 1999. On February 18, 1999, Plaintiffs filed their First Amended Consolidated Class Action Complaint ("Amended Complaint") in which they allege the following three claims for relief: (Claim 1) concerted refusal to deal and group boycott as a *per se* violation of § 1 of the Sherman Act (15 U.S.C. § 1); (Claim 2) concerted refusal to deal and group boycott under the rule of reason pursuant to § 1 of the Sherman Act (15 U.S.C. § 1); and (Claim 3) attempted monopolization in violation of § 2 of the Sherman Act (15 U.S.C. § 2).[1]

Plaintiffs now bring their second motion for class certification and for an order that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. For the reasons set forth below, and pursuant to Rule 23(c)(4), the Court DENIES Plaintiffs' motion with respect to the Amended Complaint's second and third claims for relief, but DEFERS RULING on certification with respect to the first claim for relief (*per se* violation) pending a motion for summary judgment on that claim.

## I. BACKGROUND[2]

Anheuser–Busch is a major beer manufacturer with an established distribution network. This distribution network includes some Anheuser–Busch–owned distributors and some independent distributors. Of the independent distributors, some exclusively distribute Anheuser–Busch products while others distribute Anheuser–Busch beer products as well as non-Anheuser-Busch beer products. In their First Amended Consolidated Complaint, Plaintiffs allege that Anheuser–Busch sought to force all of its independent distributors into exclusivity by engaging in anticompetitive activities. Specifically, Plaintiffs allege that Anheuser–Busch formed relationships with other brewers, which Anheuser–Busch called its "Beer Partners," and then implemented an illegal "100% Share of Mind" campaign. According to Plaintiffs, the 100% Share of Mind campaign was the means by which Anheuser–Busch and its Beer Partners effected horizontal restraints against competing breweries, including Plaintiffs.

### A. Anheuser–Busch's Beer Partners

Plaintiffs assert that to realize its desire to increase the number of exclusive indepen-

---

1. Correspondence from counsel for Anderson Valley to counsel for Anheuser–Busch indicates that Anderson Valley "no longer wishes to pursue an action against Anheuser–Busch either as a class representative or as an individual plaintiff." To date, however, Anderson Valley has not moved for dismissal in this action.

2. For general background on the distribution of beer products within the United States see the Court's Order Denying Without Prejudice Plaintiffs' Motion for Class Certification, dated November 10, 1998, published at *In re Beer Antitrust Litigation*, 188 F.R.D. 549 (N.D.Cal.1998), 1998–2 Trade Cas. (CCH) ¶ 72,338.

dent distributors, Anheuser–Busch knew that it would have to offer its distributors viable alternatives to Plaintiffs' specialty beers. Independent distributors would not be willing to forego distribution of Plaintiffs' beers unless they could provide suitable replacements to satisfy customer demand for specialty beers. To meet the demand for specialty beers, Plaintiffs allege that Anheuser–Busch acquired equity interests in several specialty breweries: Redhook Ale Brewery, a domestic brewery in which Anheuser–Busch acquired a 25% stock ownership interest; Kirin, a Japanese brewery with which Anheuser–Busch formed an alliance covering distribution rights and a brewing agreement covering both the United States and Japan; Grupo Modelo, a Mexican brewery in which Anheuser–Busch owns a non-controlling 50.2% interest; Widmer Brothers Brewing Company, a domestic brewery with which Anheuser–Busch has a distribution and equity alliance and in which Anheuser–Busch owns a 31% equity interest; Tsingtao, a Chinese brewing company in which Anheuser–Busch owns a 5% interest; CCU–Chile Brewery, an Argentine brewery in which Anheuser–Busch owns an 8.2% interest; and Antarctica Brewery, a Brazilian brewing company in which Anheuser–Busch owns a 5% interest. Anheuser–Busch refers to these two domestic and five import breweries as its "Beer Partners."

## B. The 100% Share of Mind Program

Anheuser–Busch's 100% Share of Mind campaign, directed to independent distributors, consisted of two programs: (1) an exclusivity incentive program; and (2) Amended and Restated Anheuser–Busch Wholesaler Equity Agreements.

### 1. The Exclusivity Incentive Program

Beginning on January 1, 1997, Anheuser–Busch began offering financial incentives to independent distributors which choose to exclusively distribute Anheuser–Busch products. The incentives under the Exclusivity Incentive Program include: (1) a rebate on each case of Anheuser–Busch beer sold; (2) additional days of credit in which to pay for Anheuser–Busch products; and (3) reimbursement for truck painting. Under the Program, independent Anheuser–Busch distributors are categorized as levels "A" through "E." A distributor that exclusively sells Anheuser–Busch products is level "A" while a distributor that sells any non-Anheuser-Busch beers is an "E" level distributor ineligible to receive incentives. Furthermore, a distributor may sell any of the Beer Partners' products and remain eligible to receive incentives according to the classification system.

### 2. Amended and Restated Wholesaler Equity Agreements

In addition to the Exclusivity Incentive Program, Anheuser–Busch implemented an Amended and Restated Wholesaler Equity Agreement with each of its independent distributors. It is Anheuser–Busch's policy to maintain identical distribution agreements with all of its distributors. Effective August 1997, Anheuser–Busch uniformly amended its Equity Agreements. The Equity Agreement in effect prior to the 1997 amendment granted each distributor an exclusive territory in return for which each distributor agreed to exercise its "best efforts" to promote, sell and service Anheuser–Busch products in the territory. The Amended Equity Agreements replaced the "best efforts" obligation with one to devote "primary efforts" to the sale of Anheuser–Busch products. The Amended Equity Agreements do not require distributors to cease distributing non-Anheuser-Busch products.

### C. Results of Anheuser–Busch's Activities

Plaintiffs allege that as a result of Anheuser–Busch's affiliation with its Beer Partners and the 100% Share of Mind campaign, a number of independent Anheuser–Busch distributors terminated distribution agreements with Plaintiffs and other specialty brewers, either outright or constructively. According to Plaintiffs, Anheuser–Busch's provision of alternatives to the specialty beers through their Beer Partners made the exclusivity incentive program more appealing to the independent distributors.

## D. Class Definition

Plaintiffs seek to certify this class action with the opt-out Plaintiff class defined as follows:

All brewers of specialty beer in the United States that had distribution agreements with AB's independent distributors and were terminated or constructively terminated because of the group boycott and attempt to monopolize by AB and the AB Beer Partners.

According to Plaintiffs, the term "specialty beer" includes craft and micro-brewed beers (whether brewed by a craft brewery or contract brewed), as well as imported beers brewed in the United States or with significant distribution and/or marketing efforts here. Plaintiffs seek to certify this action as to all counts against Anheuser–Busch stated in the First Amended Consolidated Class Action Complaint.

## II. LEGAL STANDARD

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed. R.Civ.P. 23(c)(1). "An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." *Id.* To maintain an action as a class action, Plaintiffs must meet the requirements of both Rule 23(a) and 23(b). *See* Fed.R.Civ.P. 23; *see also Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (plaintiff bears the burden of establishing the prerequisites of Fed.R.Civ.P. 23(a)); *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656, 661 (N.D.Cal.1976) (burden of establishing 23(a) and 23(b) requirements for certifying a class action "lies with the party seeking certification").

Rule 23(a) establishes four prerequisites for every class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(1)-(4).

In addition to satisfying the prerequisites of Rule 23(a), parties seeking class certification must also show that the action is maintainable under Rule 23(b)(1), (2), or (3). Rule 23(b)(3) requires a finding by the court that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3).

## III. DISCUSSION

Plaintiffs argue that this action should be maintained as a class action because it meets the four prerequisites of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### A. Rule 23(a)

Rule 23(a) requires that all class actions meet the standards of numerosity, commonality, typicality, and adequacy of representation.

#### 1. Numerosity

 To meet this requirement, the class must be so numerous that joinder of all members individually is impracticable. Impracticability is not the same as impossibility: it need not be shown that the number is so large that it would be impossible to join every class member. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964); *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). No exact numerical cut-off can be stated. Rather, the specific facts of each case must be examined. *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

 In this action, Plaintiffs allege that there are at least 63 class members. Anheuser–Busch, however, contends that Plaintiffs have actually identified only 27 class members, and estimate only 63 class members nationwide. Furthermore, Anheuser–Busch contends that some of those identified as potential class members by Plaintiffs do not

want to participate in this litigation as members of the class.

The Court determines that the class in this action meets the numerosity requirement. While there is some question as to exactly how many class members exist, the record reflects that there are more than twenty-five. In addition, the nationwide class members are spread out among the fifty states. Joinder of numerous plaintiffs from such a large area seems impracticable.

### 2. Commonality

Plaintiffs argue, and Anheuser–Busch does not contend otherwise, that numerous questions of law or fact common to the class exist in this action. The Court agrees and determines that the commonality requirement of Rule 23(a)(2) is met.

### 3. Typicality

■ To meet the typicality requirement, the "claims or defenses of the class representative must be typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. The claims of the purported class representative need not be identical to the claims of other class members, but the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The test "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

■ In this action, Anheuser–Busch argues that none of the named Plaintiffs is typical because none of them produces or sells imported beer. Anheuser–Busch further argues that the named Plaintiffs are all relatively small and thus not representative of the large specialty brewers included in the proposed class. The Court recognizes that small domestic breweries may have different interests than import of large specialty breweries in some respects. However, for purposes of this litigation, the named Plaintiffs possess the same interest in access to distribution as the proposed class members. Furthermore, the named Plaintiffs have allegedly suffered the same or similar injury as the members of the class they seek to represent. Therefore, the Court determines that the Plaintiffs are typical of the class members.

### 4. Adequacy of Representation

■ To meet the adequacy requirement, the person representing the class must be able "fairly and adequately to protect the interests" of all members in the class. Fed. R.Civ.P. 23(a)(4). If the members of a class are to be conclusively bound by the judgment in an action prosecuted by a "representative," they must have adequate representation. *See Richards v. Jefferson County, Alabama*, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); *see also Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1994). The representation is adequate if: (1) the attorney representing the class is qualified and competent; and (2) the class representatives are not disqualified by interests antagonistic to the remainder of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

■ In its Order regarding Plaintiffs' first motion for class certification, the Court found Plaintiffs' counsel adequate. *See* Order Denying Without Prejudice Plaintiffs' Motion for Class Certification, dated November 10, 1998. Nothing has occurred to alter that determination. However, in that same Order, the Court found that competition among class members for the services of beer distributors resulted in a conflict that went to the merits of this litigation. *See id.* On that basis, *inter alia*, the Court denied class certification.

In their Amended Complaint, Plaintiffs have proposed a class definition that purports to eliminate the conflict previously identified by the Court. Plaintiffs contend that under the new class definition there is no intra-class conflict because each class member can only assert claims resulting

from the termination or constructive termination of a specific, existing contract. Anheuser–Busch argues that the intra-class conflict which previously precluded class certification still exists.

The Court agrees with Plaintiffs. Although all potential class members are competitors, Plaintiffs' various claims assert that the class members were injured by a loss of distribution services. The new class definition includes only breweries that had existing contractual relationship with Anheuser–Busch distributors. All class members' claims therefore will be based on losses attributable to termination by a specific Anheuser–Busch distributor of a specific distribution agreement. The new class definition eliminates the possibility that "the named plaintiff's attempts to maximize its damage recovery will conflict with the interests of the other class members." *Glictronix Corp. v. American Telephone & Telegraph Co.*, 603 F.Supp. 552, 585 (D.N.J.1984). The Court therefore determines that Plaintiffs adequately represent the members of the proposed class.

## B. Rule 23(b)

Plaintiffs contend that this action qualifies for class action status only under the third alternative of Rule 23(b), which sets forth two requirements: (1) common questions must "predominate over any questions affecting only individual members"; and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The Rule also includes a nonexhaustive list of factors pertinent to a court's examination of the superiority criteria: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(A)-(D). The Court will address the

predominance and superiority criteria in turn.

### 1. Predominance of Common Questions

Given the information presented to the Court to date, it appears that individual questions predominate over common questions of law and fact in regard to Plaintiffs' claim of concerted refusal to deal and group boycott under the rule of reason analysis as well as their claim of attempted monopolization. The Court determines, however, that it would be premature to rule on Plaintiff's motion in regard to their claim of concerted refusal to deal and group boycott as a *per se* violation.

### a. Plaintiffs' Concerted Refusal to Deal and Group Boycott Claims (15 U.S.C. § 1)

In order to prevail on a cause of action for violation of 15 U.S.C. § 1, a plaintiff must show (1) there was an agreement, conspiracy, or combination between two or more entities; (2) the agreement was an unreasonable restraint of trade under either a *per se* or rule of reason analysis; and (3) the restraint affected interstate commerce. *See American Ad Management, Inc. v. GTE Corp.*, 92 F.3d 781, 784 (9th Cir.1996). Plaintiffs in this action allege the existence of two horizontal levels of agreement between entities: (1) between Anheuser–Busch and its Beer Partners; and (2) among the more than 700 independent Anheuser–Busch distributors. Thus, Plaintiffs argue that the conspiracy element of their claims would be subject to common proof. Plaintiffs further allege that Anheuser–Busch and its Beer Partners implemented an illegal restraint of trade by means of the 100% Share of Mind campaign. This, according to Plaintiffs, demonstrates that the second element of their claims would be subject to common proof. Finally, Plaintiffs argue that anticompetitive impact could be demonstrated using an econometric model which takes into account all relevant factors. Thus, Plaintiffs contend that common issues predominate.

For the most part, the Court disagrees. While it is true that the existence of a hori-

zontal conspiracy among Anheuser Busch and its Beer Partners is subject to common proof, an analysis of the alleged restraint of trade, at least under the rule of reason, would necessarily involve an examination of the hundreds of individual relationships between Anheuser–Busch and its independent distributors. Plaintiffs' allegations that Anheuser–Busch forced its distributors to drop Plaintiffs' products compel an examination of the degree of control Anheuser–Busch maintained over each distributor. Plaintiffs' allegations would further require individual determinations as to why a particular distributor discontinued servicing a specific specialty beer. Moreover, the availability of alternative means of distribution varies geographically, thus mandating consideration of discrete factors for each member of the proposed class.

■ It appears, however, that should the Court invoke a *per se* analysis of the alleged 15 U.S.C. § 1 violation, as opposed to a rule of reason analysis, common questions would likely predominate, at least as to liability. *Per se* antitrust violations, classes of restraints which from their very nature are unduly restrictive and hence forbidden by the Sherman Act, do not require proof that an agreement is, in fact, anticompetitive in the particular circumstances. *See State Oil Co. v. Khan,* 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). As Plaintiffs have argued, *per se* violations of § 1 of the Sherman Act have been recognized as suitable for class certification, despite individualized questions regarding damages. *See, e.g., Uniondale Beer Co., Inc. v. Anheuser–Busch, Inc.,* 117 F.R.D. 340, 343 (E.D.N.Y.1987) ("We agree ... that common issues are likely to predominate where, as here, the complaint alleges a horizontal conspiracy entitled to treatment as a *per se* violation of the antitrust laws.")

As the briefing reflects, there remains a serious question whether the *per se* rule applies to this case, however. As Plaintiffs have emphasized, it would not be appropriate for the Court to evaluate the merits of their claim and decide whether to invoke a *per se* analysis in the context of this motion for class certification. *See Eisen v. Carlisle &*

*Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). Accordingly, the Court believes it would be prudent to defer its determination until it can properly assess the merits of applying the *per se* approach to the present case.

Maintaining a class action as to a single claim is proper under certain circumstances. Rule 23(c)(4)(A) empowers district courts to certify a class action under Rule 23(b)(3) as to common issues only if the court feels that representative litigation will fairly and economically resolve those common issues. *See* Spencer Williams, Mass Tort Class Actions: Going, Going, Gone?, 98 F.R.D. 323, 326–27 (1983). Rule 23(c)(4)(A) provides:

> When appropriate an action may be maintained as a class action with respect to particular issues ... and the provisions of this rule shall then be construed and applied accordingly.

Fed.R.Civ.P. 23(c)(4)(A). Furthermore, the Ninth Circuit has recognized that in some cases it may be appropriate in the interest of judicial economy to resolve a motion for summary judgment or motion to dismiss prior to ruling on class certification. *See Wright v. Schock,* 742 F.2d 541, 545–46 (9th Cir.1984); *cf. Wade v. Kirkland,* 118 F.3d 667, 670 (1997)(holding that where claim appeared to be "inherently transitory," it was inappropriate for district court to delay ruling on motion for class certification pending resolution of motion to dismiss or motion for summary judgment). The Court believes it is best to employ the flexibility of Rule 23(c)(4)(A) and defer a ruling on certifying a class, as to the *per se* claim only, until resolution of a motion for summary judgment on that claim or such other time as the Court can properly determine whether to apply a *per se* analysis to the set of facts underlying the present dispute. The Court does not perceive any prejudice to Plaintiffs that would result from this delayed consideration.

### b. Plaintiffs' Attempted Monopolization Claim (15 U.S.C. § 2)

"[I]t is generally required that to demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). It appears that individual questions predominate in an examination of the attempted monopolization issues in this action.

Consideration of Anheuser–Busch's allegedly anticompetitive conduct requires an analysis of predominantly individual issues. Furthermore, individual questions inarguably predominate in the analysis of Anheuser–Busch's probability of achieving monopoly power. For example, Anheuser–Busch's market share and barriers to entry into a particular market vary geographically. *See New York v. Anheuser–Busch, Inc.*, 811 F.Supp. 848, 873 (E.D.N.Y.1993)("In sum, the relatively small market share, lack of entry barriers and the intense price competition all lead the Court to the conclusion the State has not proven that A–B possesses market power"). Likewise, the variety and availability of alternative means of distribution vary by region. Moreover, Plaintiffs admit that to estimate individual damages (which is necessary to recover treble damages pursuant to 15 U.S.C. § 15) would require an examination of "(1) the previous sales for the same brewer by the same distributor, (2) the sales of the same brewer by a non-AB distributor during the 'but-for' period, (3) other explanatory factors such as the company age of the brewer and demographic variables for each market, and (4) the critical factor, a variable denoting a brewer who was removed from an A–B distributor." Rausser Decl. ¶ 68. This explanation of the Plaintiffs' proposed method of calculating the extent to which Anheuser–Busch's allegedly improper conduct affected members of the proposed class underscores the myriad individual questions raised by Plaintiffs' attempted monopolization claim.

The Court determines that individual questions would predominate in the determination of underscores the myriad individual questions raised by Plaintiffs' attempted monopolization claim. The Court determines that individual questions would predominate in the determination of Plaintiffs' attempted monopolization claim and that class certification is not appropriate under Rule 23(b)(3).

### 2. Superiority

Upon consideration of the factors pertinent to the superiority criteria, the Court is satisfied that the best method for proceeding with the present action is as a consolidated case rather than as a class action with respect to Claims 2 and 3 of the Amended Complaint. The Court defers ruling on class status with respect to Claim 1 for the reasons set forth above.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiffs' motion to certify a class (docket no. 81) with respect to Claims for Relief 2 and 3 asserted in the Amended Complaint: concerted refusal to deal and group boycott under the rule of reason pursuant to § 1 of the Sherman Act; and attempted monopolization in violation of § 2 of the Sherman Act. However, the Court DEFERS RULING on class certification with respect to the remaining claim: concerted refusal to deal and group boycott as a *per se* violation of § 1 of the Sherman Act (Claim 1). The Court will rule on class certification following a motion for summary judgment on that claim, or such other time as the Court can properly determine whether to apply a *per se* analysis to the set of facts underlying the present dispute.[3]

IT IS SO ORDERED.

---

**3.** Concurrently with their reply brief, Plaintiffs submitted evidentiary objections to declarations

submitted by Anheuser–Busch in opposition to
the second motion for class certification (docket
no. 131). As the Court did not consider any of

the evidence to which Plaintiffs objected in its
determination of the present motion, a ruling on
Plaintiffs' objections is unnecessary.