THOMAS & THOMAS RODMAKERS,
INC., et al., Plaintiffs,

v.

NEWPORT ADHESIVES AND
COMPOSITES, INC., et
al., Defendants.

No. 99–CV–7796.

United States District Court,
C.D. California.

May 3, 2002.

William S. Lerach, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Jeff S. Westerman, Milberg Weiss Bershad Hynes & Lerach, Los Angeles, CA, Leonard Barrack, Barrack Rodos & Bacine, Philadelphia, PA, Anthony D. Shapiro, Hagens & Berman, Seattle, WA, Richard C. Davidoff, Susan K. Davidoff, Davidoff & Davidoff, Beverly Hills, Stephen R. Basser, Barrack Rodos & Bacine, San Diego, CA, Matthew P. Maniscalco, Straus & Boies, Davis, Gerald Johnson, V. Gerald Johnson, Straus & Boies, Birmingham, AL, David Boies, Ian Otto, Straus & Boies LLP, Fairfax, VA, Michael A. Bowse, Milberg Weiss Bershad Hynes & Lerach, Los Angeles, CA, for plaintiffs.

Steven O. Kramer, Mayer Brown Rowe & Maw, Los Angeles, CA, Terrence A. Callan, Kim Y. Arnone, Pillsbury Winthrop, San Francisco, CA, Jeffrey H. Ochrach, Jeffrey H. Ochrach Law Offices, Roseville, CA, Douglas B. Adler, Carl Alan Roth, Duncan E. Montgomery, Skadden Arps Slate Meagher & Flom, Los Angeles, CA, Stefanie A. Niebisch, Michael L. Weiner, Richard Falek, Skadden Arps Slate Meagher & Flom, New York City, Alexander F. Wiles, Charles E. Elder, Irell & Manella, Los Angeles, CA, Michael R. Lazerwitz, L. Burton Davis, Cleary Gottlieb Steen & Hamilton, Washington, DC, Mark E. Weber, Kimberly A. Udovic, Gibson Dunn & Crutcher, Los Angeles, CA, A. Paul Victor, Steven A. Reiss, Weil Gotshal & Manges, New York City, for defendants.

## ORDER DENYING MOTION TO STRIKE DECLARATION; ORDER GRANTING CLASS CERTIFICATION

COOPER, District Judge.

This matter is before the Court on Defendants' Motion to Strike Plaintiffs' expert report. This matter is also before the Court on Plaintiffs' Motion to Certify Class. These matters were heard by the Court on March 18, 2002, at which time the parties were in receipt of the Court's Tentative Order. For the reasons stated below, the Court **hereby denies** Defendants' Motion to Strike (docket # 228), and the Court **hereby grants** Plaintiffs' Motion to Certify Class (docket # 190).

### I. Background

The complaint alleges that defendants violated federal antitrust laws by conspiring to raise the price of carbon fiber and prepeg, a product made from carbon fiber. Carbon fiber products are manufactured by exposing certain organic materials to extreme temperatures. Carbon fibers can be combined with resins to form "prepreg" products, which are ultimately incorporated into finished goods. Carbon fiber and prepreg products go

through additional processing before being incorporated into final goods sold.

Plaintiffs are four sporting goods manufacturers and one assignee of a sporting goods manufacturer. Plaintiffs allege that defendants conspired for six years to fix the price of carbon fiber and prepeg in the United States.

Defendants are ten domestic and three Japanese manufacturers of raw carbon fiber and/or prepreg products. During the proposed class period, some defendants made both carbon fiber and prepreg, two made only carbon fiber, and one made only prepreg.

Plaintiffs request class certification of:

All persons (excluding governmental entities, defendants, their subsidiaries and affiliates) who purchased Carbon Fiber in the United States directly from any of the defendants or any subsidiary or affiliate thereof, at any time during the period from January 1, 1992, and January 31, 1999.

(*See* Reply at 3 n. 1.).[1]

The Court will refer to these proposed plaintiffs as "the proposed class action plaintiffs."

## II. Motion to Strike

### A. Defendants' Position

Defendants move to strike the declaration of Robert Tollison, plaintiffs' expert. At the outset, the Court notes that the present Motion is not properly a motion to strike, which should be addressed to the pleadings only. *See, e.g., Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 880 (9th Cir.1983). Nevertheless, defendants' Motion, when construed as an objection to evidence offered in support of class certification, is properly before the Court.

1. This definition differs from that appearing in the Amended and Consolidated Complaint and the original Complaint. The earlier definitions attempted to exclude unidentified co-conspirators from the class of plaintiffs, and/or attempted to define class plaintiffs as those who directly purchased carbon fiber and prepreg not only from the named defendants but also their alleged co-conspirators.

Plaintiffs' counsel and a consultant hired by plaintiffs' counsel selected documents for Tollison to review. Defendants argue that Tollison impermissibly merely assumes the substantive allegations of the complaint are true in arriving at his conclusion. Defendants argue that Tollison's declaration has no factual foundation, is speculative, and relies on assumptions unsupported by the record. Specifically, Defendants object to Tollison's declaration in the following ways:

1) Tollison has not tested his economic methodolgy;

2) Tollison has not studied the actual prices purchasers paid defendants for carbon fiber or prepreg products;

3) Tollison has not estimated the price purchasers would have paid absent the alleged conspiracy;

4) Tollison has not generated, analyzed, or calculated empirical data to evaluate his hypothesis;

5) Tollison has not examined the percentage of sales of carbon fiber products defendants made to nondefendant entities;

6) Tollison has not analyzed whether customers of carbon fiber products considered price to be the most important purchasing factor;

7) Tollison has not studied the percentage of costs downstream that prepreggers pass on to customers;

8) Tollison has not studied the elasticity of demand for any products sold by defendants; and

9) Tollison has not spoken with any carbon fiber or prepreg purchasers other than one conversation with one of the named plaintiffs.

Additionally, defendants argue that Tollison relies on the assumptions of the conspiracy that are neither rational nor reasonable.

At oral argument, defendants described a scenario in which purchasers of carbon fiber could be either defendants or plaintiffs, depending upon whether those purchasers were, in fact, part of the alleged conspiracy. Whether they were members of the alleged conspiracy, defendants argued, would require an individualized factual assessment that would preclude class certification. The class definition proposed by plaintiffs in the Reply alleviates these concerns.

Specifically, defendants make the following arguments:

1) Tollison testified that this action involves a horizontal price-fixing conspiracy which had vertical implications at the prepreg level, but plaintiffs characterize the present action as a "classic horizontal price-fixing conspiracy."

2) For a conspiracy to be rational, there must be an economic payoff for each party to the conspiracy. Tollison assumed that the conspiracy affects the price of both carbon fiber and prepreg, yet he testified that any conspiracy profit would have to be recognized at the prepreg level. The defendants that purchase carbon fiber to process into prepreg, but do not manufacture carbon fiber, would be illogical participants to the conspiracy alleged by plaintiffs because these defendants would be agreeing to conspire to increase the price of their own raw materials.

Defendants also argue that Tollison did not express an understanding of how purchasers obtained carbon fiber products, and did not consider the impact of long-term price and supply contracts customers or purchasers that bought at a spot market.

Defendants contend that Tollison ignored the preferences and power of purchasers and did not consider such circumstances as the effect of a "Buy American" policy.

## B. Admissibility of Expert Testimony

■ To be admissible, expert testimony must be relevant (or helpful) and reliable. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In *Daubert*, the Court charged trial judges with the responsibility of acting as gatekeepers to "'ensure that any and all scientific testimony ... is not only relevant, but reliable,'" and the Court in *Kumho Tire* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. See *Kumho Tire*, 526 U.S. at 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (quoting *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786, 125 L.Ed.2d 469). Rule 702 of the Federal

Rules of Evidence, which governs the admissibility of expert opinion testimony, states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Rule 702 requires that the evidence "assist the trier of fact," or in other words, that it be relevant. *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. Second, Rule 702 demands that the evidence be reliable. *See id.* at 590, 113 S.Ct. 2786. Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs. *See id.*

## C. Tollison's Declaration

■ Defendants' objections address the reliability of Tollison's declaration rather than the relevance of it. The objections also attack the methodology employed by Tollison rather than attacking Tollison's qualifications.

Upon review of Tollison's declaration, the Court is satisfied that the opinion meets the *Daubert* standard. *See Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir.1996)(characterizing the district court's gatekeeper function under *Daubert* as one meant to separate inadmissible opinions based on "junk science" from those based on scientific method). It is clear to the Court that a lower *Daubert* standard should be employed at this stage of the proceedings. Courts have declined to engage in a *Daubert* analysis at the class certification stage of an action on the ground that an inquiry into the admissibility of the proposed expert testimony under *Daubert* would be an inappropriate consideration of the merits of the plaintiff's claims. *See In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 132 n. 4 (2d Cir.2001) (noting that a *Daubert* motion is typically made in connection with a motion for summary judgment, motion in limine, or at trial, rather than in connection with a motion for class certification), *petition for cert. filed*, —— U.S. ——, —— S.Ct. ——

(Apr. 3, 2002); *In re Linerboard Antitrust Litigation,* 203 F.R.D. 197, 217 n. 13 (E.D.Pa.2001) ("To preclude such evidence at the class certification stage, it must be shown that the opinion is the kind of 'junk science' that a Daubert inquiry at this preliminary stage ought to screen."); *In re Polypropylene Carpet Antitrust Litigation,* 996 F.Supp. 18, 26 (N.D.Ga.1997) (postponing *Daubert* analysis, noting that at class certification stage, the court simply examines whether expert's methodology will comport with basic principles, will have any probative value, and will primarily use evidence that is common to all members of the proposed class).

At this stage in the proceeding, an expert report should not be excluded merely on the basis that it assumes the substantive allegations of the complaint rather than relying upon actual data that may yet to be discovered. Additionally, the Leffler declaration persuasively refutes defendants' arguments regarding Tollison's methodology. Moreover, as detailed below, the Court is unpersuaded by defendants' arguments regarding a lack of common impact on the class and the vertical implications of the alleged conspiracy.

Accordingly, Defendant's Motion to Strike is hereby denied.

### III. Class Action Requirements

█ Plaintiffs seek to have a class certified pursuant to Rule 23(a)(1)-(4) and 23(b)(3) of the Federal Rules of Civil Procedure. Prior to class certification, plaintiffs must first define an ascertainable and identifiable class. *See Schwartz v. The Upper Deck Co.,* 183 F.R.D. 672, 679 (S.D.Cal.1999). Once an ascertainable and identifiable class has been defined, plaintiffs must show [2] that they meet the four requirements of Rule 23(a), and the two requirements of Rule 23(b)(3). *In re Beer Distribution Antitrust Litigation,* 188 F.R.D. 557 (N.D.Cal.1999).

**2.** Plaintiff bears the burden of proof on class certification requirements. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992).

**3.** "Courts interpreting the commonality requirement in the antitrust area have held that 'allegations concerning the existence, scope, and efficacy of an alleged conspiracy present questions

In ruling on a motion for class certification, the Court is not required to determine the merits of any claim or defense. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claim. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

### A. Rule 23(a)(1)-(4)

Rule 23(a) establishes four prerequisites for every class action: (1) the class must be so numerous that joinder of all members is impracticable [the numerosity requirement]; (2) there must be questions of law or fact common to the class [the commonality requirement]; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class [the typicality requirement]; and (4) the representative parties must fairly and adequately protect the interests of the class [the adequacy of representation requirement]. *See General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); Fed.R.Civ.P. 23(a)(1)-(4).

Rule 23(b)(3) requires a finding by the court (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Defendants do not argue that plaintiffs have failed to meet the numerosity or commonality requirements of Rule 23(a).[3] Rather, Defendants argue that plaintiffs have not met the typicality and adequacy of representation requirements.

adequately common to class members to satisfy the commonality requirement.'" *In re Flat Glass Antitrust Litigation,* 191 F.R.D. 472, 477 (W.D.Pa.1999) (quoting 4 Newberg & Conte, *Newberg on Class Actions,* § 18.05, at 18–15 (3d ed.1992)).

**164**

### 1. Typicality [4]

■ The typicality requirement of Rule 23(a) is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). This is a permissive standard, and "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). To satisfy the typicality requirement, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Tel. Co.*, 457 U.S. at 156, 102 S.Ct. 2364.

■ The typicality requirement is satisfied "if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *In re Lorazepam & Clorazepate Antitrust Litigation*, 202 F.R.D. 12, 21 (D.D.C.2001). The typicality requirement has been liberally construed. In the antitrust context, typicality "will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *In re Playmobil Antitrust Litigation*, 35 F.Supp.2d 231, 241 (E.D.N.Y.1998). "The overarching scheme is the linchpin ... regardless of the product purchased, the market involved, or the price ultimately paid. Furthermore, the various products purchased and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provided the cause of action arises from a common wrong." *In re Flat Glass Antitrust Litigation*, 191 F.R.D. at 480.

■ Defendants argue that because the named plaintiffs purchased only prepreg, plaintiffs need only prove a conspiracy at the prepreg level, not at the carbon fiber level; therefore, their claims are not typical of the class, which includes purchasers of carbon fiber as well. However, plaintiff Royal Pre-

cision purchased carbon fiber during the class period.[5]

The Court agrees that there are two groups of plaintiffs within the proposed class: direct purchasers of carbon fiber and direct purchasers of prepreg. As noted more fully in a separate section below, the horizontal conspiracy that is alleged is not without vertical implications.

Nevertheless, the Amended and Consolidated Complaint clearly alleges a conspiracy at both the carbon fiber and prepreg levels. "Courts consistently certify classes because the complaints themselves provide sufficient incentive—[because] individual plaintiffs cannot prove their own claims without proving the class claims." *In re Citric Acid Antitrust Litigation*, 1996 WL 655791 (N.D.Cal. 1996). Here, plaintiffs have alleged a conspiracy that involves both the carbon fiber and prepreg levels of production; if they prove their claims as alleged, plaintiffs will also prove the claims of the absent class members who purchased carbon fiber only.

"Furthermore, as to the vitamin products class, plaintiffs have alleged that defendants have participated in a unitary overarching conspiracy which encompassed the number of identified vitamins. As alleged coconspirators, defendants are jointly and severally liable to each and every class member for damages sustained on all class members' purchases of all vitamin products encompassed by the conspiracy class plaintiffs have alleged." *In re Vitamins Antitrust Litigation* at *18.

Defendants also argue that products purchased by plaintiffs are limited and not representative of the whole spectrum of carbon fiber and prepreg. Defendants argue that plaintiffs' uses of the products are not representative, that they have different purchasing power, more simplified purchasing arrangements, and greater ability to use substitute products than do other plaintiffs, especially plaintiffs involved in the aerospace industry. However, the Court is persuaded by Tolli-

---

4. As a practical matter, a number of arguments advanced by defendants apply to more than one of the typicality, adequacy, and predominance inquiries.

5. *See* Bowse Reply Decl., Exh. 1. The purchases were made by Brunswick Golf, whose interests were later assigned to plaintiff Royal Precision.

son's opinion that such differences in uses and purchasing practices do not render plaintiffs' claims atypical. Tollison offers the opinion that prices in the industry are formulaic, and that differences in products purchased and purchasing practices can be isolated.

In any event, as to typicality, the Court agrees with plaintiffs' assessment that all that is required is that each plaintiff have an incentive to prove defendants' participation in the alleged conspiracy. For these reasons, the Court concludes that plaintiffs have met the "low threshold" of typicality. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir.2001).

"The typicality requirement does not mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class members." *In re Vitamins Antitrust Litigation*, Case No. 99–197, MDL Docket No. 1285, 2002 WL 31011261 (D.D.C., Feb. 25, 2002) at *16.

### 2. Adequacy of Representation Requirement

 To satisfy the adequacy of representation requirement, "the representative parties [must] fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Due process concerns require that absent class members be afforded adequate representation before they are subject to entry of a binding judgment. *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). Determining adequacy of representation requires resolution of two questions: (1) Do the named plaintiffs and their counsel have any conflicts of interest with other class members? And (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Hanlon*, 150 F.3d at 1020. Alternatively, the Ninth Circuit has stated that the adequacy of representation requirement is met when the representatives fairly and adequately protect the interests of the class. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001), *cert. denied,* ── U.S.

──, 122 S.Ct. 395, 151 L.Ed.2d 299 (2001). Adequate representation depends on the qualifications of counsel, the absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive. *Id.*

Defendants' arguments regarding plaintiffs' adequacy overlap, in large part, with their arguments regarding plaintiffs' typicality. For the reasons detailed in the previous section, these arguments are rejected.

Accordingly, the Court concludes that there are no conflicts between the named plaintiffs and the proposed class, there is an absence of antagonism, a sharing of interests, and an unlikelihood of collusion.

Defendants do not challenge the qualifications of counsel. Defendants argue, however, that the class representatives are not sufficiently familiar with the present case to be adequate representatives and that they have abdicated too much control over the litigation to the attorneys. The Court has reviewed the evidence submitted by plaintiffs and defendants, and the Court concludes that plaintiffs have at least a rudimentary understanding of the nature of the present action and they have a demonstrated willingness to assist counsel in the prosecution of the litigation.

### B. Rule 23(b)(3) Requirements

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (citation omitted). Rule 23(b)(3) certification requires that common questions predominate over any questions affecting only individual members, and that class resolution be superior to other methods for the fair and efficient adjudication of the controversy. *Id.*

### 1. Questions of Law or Fact Predominate

 The Court has no difficulty concluding that questions of law and fact predominate in this action. "Predominance is a test readily met in certain cases alleging ... violations of the antitrust laws." *Amchem*

*Products v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). As a general rule, an illegal price-fixing scheme presumptively impacts on all purchasers of a price-fixed product. *In re Citric Acid Antitrust Litigation,* 1996 WL 655791 (N.D.Cal. 1996).

Defendants' argument that the present controversy is not a classic horizontal conspiracy does not persuade the Court that certification is not appropriate.[6] Defendants are correct that the present alleged conspiracy cannot be viewed a strictly horizontal. Even plaintiffs' own expert, Tollison, has acknowledged that the conspiracy alleged in this action has some "vertical implications." However, it is clear to the Court that the alleged conspiracy is among competitors, and therefore case law regarding horizontal price-fixing conspiracies will be viewed by the Court as more persuasive than case law involving vertical conspiracies. Moreover, class actions have been certified where the relationship among defendants was vertical as well as horizontal. *See Transamerican Refining Corp. v. Dravo,* 130 F.R.D. 70, 72, (S.D.Texas 1990); *In re Fine Paper Antitrust Litigation,* 82 F.R.D. 143, 151 (E.D.Pa. 1979), *aff'd* 685 F.2d 810 (3d Cir.1982), *cert. denied sub nom., Alaska v. Boise Cascade,* 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983); *In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244, 245 (S.D.Texas 1978).

The Court is persuaded that given the presence of defendants that are vertically integrated at the carbon fiber and prepreg levels, the existence of a horizontal conspiracy on both levels is certainly plausible.[7] The Court is also persuaded that, assuming that plaintiffs can prove the conspiracy alleged in the Amended Complaint, the proposed class would suffer a common impact from the conspiracy.

Defendants also argue that the physical differences, the differences in price, and the differences in the application of the various carbon fiber and prepreg products preclude a finding that common questions of law and fact predominate. In short, defendants contend that the products at issue are not fungible commodities. Plaintiffs disagree.

The Court is persuaded by Tollison's explanation of what is meant in economic terms regarding the substitutability of defendants' products. Tollison explains two types of substitutability.

Demand-side substitutability is present in this case because carbon fiber producers compare their product offerings with those offered by competitors. (Tollison Decl. at 11). A number of defendants in this action have a "competitive product guide" that compares the their products to those of competitors with respect to physical properties. Additionally, there is evidence of discussions within one of the industry's trade associations regarding standardized product specifications.

Demand-side substitutability is less prominent in prepreg products because those products are characterized to some extent by customized production. However, much of the prepreg output is standardized, and buyers can substitute and adapt prepreg output from different suppliers. Additionally, a number of customers require prepreg made to precisely the same specifications.

Supply-side substitutability has to do with the purchaser's ability to acquire the products it needs from another source. Tollison acknowledges that carbon fiber production is specialized (large tow v. small tow), but it is possible for producers to switch from one

6. A horizontal restraint of trade is an agreement among competitors, and a vertical restraint of trade involves businesses that operate at different levels of distribution, such as a supplier and a wholesale or retail distributor. *See* von Kalinowski, et al., *Antitrust Laws and Trade Regulation,* § 11.01 (2d. ed.2001).

7. On a similar note, defendants argue that independent prepreggers would have no incentive to agree to a conspiracy that would increase the amount they paid for their raw materials—carbon fiber—however, the Court is persuaded by Tollison's explanation that such incentive could be provided to the independent prepreggers as side payments. Evidence of such agreements is simply not required at this stage. Moreover, the independent prepreggers would have economic incentive to agree to price-fixing of carbon fiber if their profits on the sale of prepreg were increased beyond that point required to cover the increased cost of the carbon fiber.

product to others. As to the supply-side substitutability of prepreg, Tollison notes that it is generally acknowledged that prepreg production is fungible. For example, a machine that makes aerospace prepreg can be retooled to make non-aeospace prepreg in a matter of hours or, at most, days.

Tollison also explains other factors that support a finding of common impact. As noted previously, pricing in the industry is formulaic, which suggests there is product comparability. (Tollison Reply Decl. at 20). Additionally, the presence of wholesalers and distributors in the industry suggests some substitutability of products.

Tollison also addresses defendants' concerns regarding "qualified" products. Certain purchasers, especially those in the aerospace industry, purchase certified, prequalified products that have met certain standards.[8] Tollison explains that certified sales are, nevertheless, subject to competition. In the absence of the alleged conspiracy, there is no reason to believe that such sales would not be contested if prices rose above competitive levels.

In light of this evidence of common impact, plaintiffs correctly argue that all that is required to meet the predominance element is that individual issues not overwhelm the common questions so as to render the class action valueless. *See e.g., Weil v. The Long Island Savings Bank*, 200 F.R.D. 164, 174 (E.D.N.Y.2001); *In Re: Cardizem CD Antitrust Litigation*, 200 F.R.D. 326, 339 (E.D.Mich.2001), *In Re: Playmobil Antitrust Litigation*, 35 F.Supp.2d 231, 244–45 (E.D.N.Y.1998); *Buford v. H. & R. Block, Inc.*, 168 F.R.D. 340, 349 (S.D.Ga.1996), *aff'd* 117 F.3d 1433 (11th Cir.1997)..

What is required to demonstrate the predominance of common questions of fact or law is "a common nucleus of operative facts." *Siegel v. Chicken Delight, Inc.*, 271 F.Supp. 722, 726 (N.D.Cal.1967). In price-fixing cases, "courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." *In re NASDAQ Market–Makers Antitrust Litigation*, 169 F.R.D. 493, 518 (S.D.N.Y.1996).

Plaintiffs also correctly note that in order to determine predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members. *See e.g., Advocate Health Care v. Mylan Laboratories, Inc.*, 202 F.R.D. 12, 29 (D.D.C.2001); *Iron Workers Local No. 17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 539–40 (N.D.Ohio 1998); *In re Corrugated Container Antitrust Litigation*, 80 F.R.D. 244, 250 (S.D.Tex.1978). Here, it is clear that the main issue that will be resolved in the present action is whether **defendants** conspired to fix the price of carbon fiber and prepreg.

The Court finds that the predominance requirement has been met.

### 2. Superiority of Class Action Mechanism

In addition to meeting the predominance requirement, plaintiffs must also show that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The superiority inquiry requires a determination of whether the objectives of the particular class action procedure will be achieved in the particular case. *Hanlon*, 150 F.3d at 1023 (citation omitted).

In *Hanlon*, the Ninth Circuit affirmed the certification of a class of owners of Chrysler minivans with allegedly defectively designed rear liftgate latches. The court held that the class action mechanism was a superior method of resolving the dispute, reasoning that many owners would be unable to pursue relief otherwise because of the relatively high cost of litigation and the relatively low amount of recovery expected. The court also acknowledged that a single plaintiff would have very little settlement leverage against the defendant, but that as a class, the plaintiffs possessed significant leverage.

---

**8.** Certification refers to the process by which carbon fiber and prepreg suppliers must be qualified to make certain sales, especially in the aerospace and military industries.

Plaintiffs argue that class treatment of antitrust actions is inherently superior to individualized actions and, given the wealth of case law on the subject, the Court is inclined to agree. Additionally, the Court finds persuasive plaintiffs' argument that individualized actions could well be economically unfeasible.

The parties do not specifically address their arguments to the list of factors to be considered by the Court in determining the superiority issue. *See* Rule 23(b)(3)(A)—(D). Those factors are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

The majority of the members of the class have no interest in individually controlling the prosecution of the current action. To the contrary, given the scope of the conspiracy alleged, it appears to the Court that the members of the class have an interest in limiting the costs of litigation by pooling together with other plaintiffs. Additionally, to the extent that some class members may want more individual control, those class members are entitled to opt-out under Rule 23(c)(2)(A).

There has been no suggestion of any similar ongoing litigation by the class members against defendants.[9]

The same reasons set forth above regarding the predominance requirement suggest that it is desirable to concentrate the litigation of these claims in this forum.

Finally, the Court sees no particular difficulty in the management of this action.[10]

## C. Certification of Class

For the reasons set forth above, the Court hereby certifies the class of plaintiffs set forth on page 160, *supra.*

## IV. Conclusion

The Court **hereby denies** Defendants' Motion to Strike Tollison Declaration (docket # 228), and the Court **hereby grants** Plaintiffs' Motion to Certify Class (docket # 190). The parties shall file, within twenty days of the entry of this Order, their recommendations (if any) regarding how service to the absent class members (as required pursuant to Fed.R.Civ.P. 23(c)(2)) can best be effectuated.

9. A case involving factual allegations similar to those alleged in the Amended and Consolidated Complaint was brought to the Court's attention after oral argument was heard. Defendant argues that certain putative class members are defendants in a Qui Tam action filed under seal in July 1999. Defendants in this action are also defendants in the Qui Tam action. The Court has reviewed the Qui Tam complaint provided by defendants, and concludes that the Qui Tam action should not preclude class certification in this action.

None of the named defendants in the Qui Tam action are class representatives in this action. The putative class members that are defendants in the Qui Tam action are not alleged to have been part of the price-fixing conspiracy; rather, the putative class members are alleged only to have known about the wrongful conduct alleged in this Complaint.

The United States Supreme Court recognized in *Perma Life Mufflers v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), that antitrust plaintiffs need not be completely innocent victims of a price-fixing conspiracy in order to assert an antitrust claim: "The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition. . A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement." *Perma Life,* 392 U.S. at 139, 88 S.Ct. 1981.

Defendants should not be released from accountability because some of the plaintiff class members might have known about their conduct and failed to report it.

10. This case may require individualized damage assessments; however, this is not a basis for denying certification of a class. *See, e.g., In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d at 140–41; *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 147 (4th Cir.2001); *Winkler v. DTE, Inc.,* 205 F.R.D. 235, 245 (D.Ariz.2001).